**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

VERNON WILLIAMS,

    Petitioner,

-vs-                                                  Case No.  8:02-CV-1750-T-30EAJ

JAMES V. CROSBY, JR., et al.,[1]

    Respondents.
_____/

    Petitioner, an inmate of the Florida penal system proceeding *pro se*, initiated this action by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1). Petitioner challenges convictions entered by the Sixth Judicial Circuit Court, Pinellas County, Florida, on November 19, 1998, for burglary of a dwelling and attempted burglary of a dwelling (Dkt. 1 at 2). Respondent has filed a response to the petition (Dkt. 6), and Petitioner has filed a reply thereto (Dkt. 11).  The matter is now before the Court for consideration of the merits of the petition.

    Given Petitioner's statement in his reply that he does not dispute the procedural history as set forth by Respondent, a recitation of the procedural history of Petitioner's criminal conviction is not necessary (Dkt. 11 at 2).  Since there are no issues regarding the timeliness of the petition or the exhaustion of the claims in state court, the procedural history is not germane to the resolution of the claims raised in Petitioner's habeas petition.

---

[1] James V. Crosby, the current Secretary of the Florida Department of Corrections, is substituted as the proper party respondent for Michael W. Moore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure

**Standard of Review**

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003); *Maharaj v. Sec'y of Dept. of Corr.*, 304 F.3d 1345, 1346 (11th Cir. 2002). Pursuant to § 2254, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application, of clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Price v. Vincent*, 538 U.S. 634, 638-39 (2003); *Clark v. Crosby*, 335 F.3d 1303, 1308 (11th Cir. 2003); *Harrell v. Butterworth*, 251 F.3d 926, 930 (11th Cir. 2001). "Clearly established Federal law" is the governing legal principle, not the dicta, set forth by the United States Supreme Court at the time the state court issues its decision. *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Where no Supreme Court precedent is on point, or the precedent is ambiguous, it cannot be said that the state court's conclusion is contrary to clearly established governing federal law. *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003); *Clark v. Crosby*, 335 F.3d at 1308-10; *Washington v. Crosby*, 324 F.3d 1263, 1265 (11th Cir. 2003).

A state court decision is "contrary to" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the

Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. *Mitchell v. Esparza*, 540 U.S. at 17 (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000) (hereinafter "*Williams I*")). See also *Price v. Vincent*, 538 U.S. at 639 ; *Lockyer v. Andrade*, 538 U.S. at 75-77. A state court does not have to cite the Supreme Court precedent, or even be aware of it, so long as neither its reasoning nor its result contradicts Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Mitchell v. Esparza*, 540 U.S. at 17; *Parker v. Sec'y of Dep't of Corr.*, 331 F.3d 764, 775-76 (11th Cir. 2003).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams I*, 529 U.S. at 411. A state court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct governing legal rule from Supreme Court cases but unreasonably applies it to the facts of the particular inmate's case; or if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply; or unreasonably refuses to extend that principle to a new context where it should apply. *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000). The "unreasonable application" inquiry requires the state court decision to be more than incorrect or erroneous; it must be objectively unreasonable. *Lockyer v. Andrade*, 538 U.S. at 75-77; *Williams I*, 529 U.S. at 409-10; *Penry v. Johnson*, 532 U.S. at 791-792; *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002); *Mitchell v. Esparza*, 540 U.S. at 18; *Price v. Vincent*, 538 U.S. at 639.

Whether a state court's decision was unreasonable must be assessed in light of the record the court had before it. *See Holland v. Jackson*, 542 U.S. 649, ___, 124 S.Ct. 2736, 2737-2738 (2004) (citing *Yarborough v. Gentry*, 540 U.S. 1 (2003)) (per curiam) (denying

relief where state court's application of federal law was supported by the record); *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003) (reasonableness of state court's factual finding assessed "in light of the record before the court"); *cf. Bell v. Cone*, 535 U.S. at 697, n. 4 (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

Petitioner has the burden of overcoming all state court factual determinations by clear and convincing evidence. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Henderson v. Campbell*, 353 F.3d at 890-91. The statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir. 2001), *cert denied*, 534 U.S. 1046 (2001). Because of the deference due the state court's findings of fact and conclusions of law, the state court's determination of each of Petitioner's claims largely governs review of those same claims. Consequently, in order to determine the reasonableness of the state court's determinations, the review of Petitioner's grounds will include a recitation of the state court's analysis.

**Evidentiary Hearing**

Petitioner asserts that he is entitled to an evidentiary hearing on the claims asserted in his § 2254 petition. Rule 8 of the Rules Governing Section 2254 Cases provides, in pertinent part, that once all of the parties' documents have been filed with the court, "the judge. . .shall review the answer, any transcripts and records of state-court proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." *See also* Rules Governing Section 2254 Cases 8(a) advisory committee note

(stating that "[s]ince the function of an evidentiary hearing is to try issues of fact. . . , such a hearing is unnecessary when only issues of law are raised.") (citation omitted).

A petitioner has the burden of establishing the need for an evidentiary hearing. *See Birt v. Montgomery*, 725 F.2d 587, 591 (11th Cir.) (en banc), *cert. denied*, 469 U.S. 874 (1984). Petitioner has not met that burden. The Court finds that an evidentiary hearing is not required in this matter. *See Jones v. United States*, 304 F.3d 1035, 1045 n.18 (11th Cir. 2002); *In re Boshears,* 110 F.3d 1538, 1541 n.1 (11th Cir. 1997) (recognizing that "hearing and findings of fact [are] not required . . . where 'the files and records of the case conclusively show that the prisoner is entitled to no relief'" (quoting 28 U.S.C. § 2255)).

## Discussion

Three of the four grounds Petitioner presents in his § 2254 petition allege violations of his Sixth Amendment right to effective assistance of counsel.  These claims were raised in the application for state post-conviction relief he filed pursuant to Fla. R. Crim. P. 3.850. Petitioner faults trial counsel for (1) failing to object to Officer Yarborough's testimony that Petitioner was apprehended on private property between two houses, which, according to Petitioner, inferred that he had committed uncharged crimes; (2) preventing Petitioner from testifying in his own behalf by advising him that if he took the stand, "the State would be allowed to introduce the nature of his prior convictions to the jury, which would effectively negate any creditability [sic] he had"; and (3) failing to object "when during the jury charge, the trial court incorrectly defined the offense of burglary" (Dkt. 1).

In his fourth ground for relief, Petitioner argues that the trial court erred in relying on the statement he made during the trial "that he was satisfied with counsel's performance" in its decision rejecting his claim that trial counsel "interfered" with his right to testify. In his reply to the response, Petitioner expands the scope of this argument, contending that the

trial court "unreasonably applied [the *Strickland* standard] to the facts of the case[,] allowing his decision to rest solely on the counsel['s] credibility[,] lacking corroborated evidence" (Dkt. 11 at 14-15). Because this claim is inextricably intertwined with the argument presented in Ground Two of the petition, the two claims are consolidated for purposes of the Court's review.

In reply to Respondent's response, Petitioner concedes that he is not entitled to habeas relief on the claims raised in Grounds One and Three of his habeas petition (Dkt. 11 at 6). He does, however, continue to press the issues raised in Grounds Two and Four. Thus, the only issue for the Court to resolve is Petitioner's assertion that trial counsel was ineffective in advising him whether he should testify.

In order to show a violation of the Sixth Amendment right to counsel, Petitioner must satisfy the two-pronged test enunciated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984): (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687-88. *See also Wiggins v. Smith*, 539 U.S. 510, 534 (2003); *Williams v. Taylor*, 529 U.S. 362 (2000).

A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland v. Washington*, 466 U.S. at 690). This judicial scrutiny is "highly deferential." *Id.* A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland v. Washington*, 466 U.S. at 689-90; *see also Bell v. Cone*, 535 U.S. 685, 698

(2002). Because the ultimate resolution of the ineffective assistance of counsel claims are mixed questions of law and fact, *Thompson v. Haley*, 255 F.3d 1292, 1297 (11th Cir. 2001); *Meeks v. Moore*, 216 F.3d 951, 959 (11th Cir. 2000), the presumption of correctness contained in § 2254(e)(1) does not apply to this determination. *Parker v. Head*, 244 F.3d 831, 835-37 (11th Cir. 2001), *cert denied*, 534 U.S. 1046 (2001). In addressing the level of deference due state court decisions on ineffective assistance of counsel claims, the Eleventh Circuit stated:

> Because "both the performance and the prejudice components of the ineffectiveness test are mixed questions of fact and law . . . [,] a state court's ultimate conclusions regarding competence and prejudice are not findings of fact binding on the federal court to the extent stated by § 2254(d). . . ." *Kimmelman,* 477 U.S. at 388-89, 106 S.Ct. at 2590. Subsidiary findings of historical fact and findings that certain decisions by counsel were tactical choices, however, are entitled to a presumption of correctness under § 2254 as questions of fact. *Id.* at 389, 106 S.Ct. at 2590; *Horton v. Zant,* 941 F.2d 1449, 1462 (11th Cir. 1991), *cert. denied,* 503 U.S. 952, 112 S.Ct. 1516, 117 L.Ed.2d 652 (1992). Thus, we defer to the state court's findings of fact but apply our own judgment as to whether the conduct constitutes ineffective assistance of counsel.

*Mills v. Singletary*, 63 F.3d 999, 1024 n.43 (11th Cir. 1995), *cert. denied*, 517 U.S. 1214 (1996).

"To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (en banc), *cert. denied*, 536 U.S. 964 (2002) (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)). "Therefore, the cases in which habeas petitioners can properly prevail an the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.), *cert. denied*, 513 U.S. 899 (1994).

The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take. *See Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000), *cert. denied*, 531 U.S. 1204 (2001). An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation. Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment. *Id.* at 1314 n.15.

Thus, as *Chandler* makes clear, the presumption afforded counsel's performance "is not . . . that the particular defense lawyer in reality focused on and, then, deliberately decided to do or not to do a specific act." *Id.* Rather, the presumption is "that what the particular defense lawyer did at trial – for example, what witnesses he presented or did not present – were acts that some reasonable lawyer might do." *Id.*

Finally, "[n]o absolute rules dictate what is reasonable performance for lawyers." *Chandler*, at 1317. Absolute rules would interfere with counsel's independence – which is also constitutionally protected – and would restrict the wide latitude counsel have in making tactical decisions. *Id.* The reasonableness of counsel's performance is determined through deferential review of all of the circumstances from the perspective of counsel at the time of the alleged errors. *Strickland v. Washington*, 466 U.S. at 689. Every effort should be made to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's perspective at the time." *Id.*

In applying the AEDPA standard to ineffective assistance of counsel claims, the federal court's focus is on whether the state decision can be viewed as objectively

reasonable. *See Wellington v. Moore*, 314 F.3d 1256, 1261 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide." (internal quotation omitted)), *cert. denied*, 535 U.S. 1107 (2002). The Supreme Court reiterated the highly deferential standard for evaluating state-court rulings in *Woodford v. Visciotti*:

> Under § 2254(d)'s "unreasonable application" clause, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied *Strickland* incorrectly. See *Bell v. Cone,* 535 U.S. 685, 698-699, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Williams, supra,* at 411, 120 S.Ct. 1495. Rather, it is the habeas applicant's burden to show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner. An " *unreasonable* application of federal law is different from an *incorrect* application of federal law."

537 U.S. 19, 24-25 (2002) (reversing the circuit court's grant of habeas relief to a state prisoner under death sentence, the court found that the circuit court ultimately substituted its own judgment for that of the state court, in contravention of 28 U.S.C. § 2254(d) (citation omitted)).

Having concluded that an evidentiary hearing was necessary to resolve the claims asserted by Petitioner in his Rule 3.850 motion, the trial court appointed counsel to represent him (Dkt. 9, Ex. 014, Vol. 1 at 147-48). During the hearing, the trial court heard testimony from Petitioner and trial counsel. In its order denying Petitioner's Rule 3.850 motion, the trial court set forth the following standard of review:

> In his Motion for Post Conviction Relief, Defendant raised three ineffective assistance of counsel claims. According to *Strickland v. Washington*, 466 U.S. 668 (1984), to prove that counsel was ineffective, Defendant must show that 1) counsel's performance was so deficient as to overcome the presumption that counsel's conduct was reasonable; and 2) the deficient performance prejudiced the defense such that the result of the trial would have been different but for counsel's deficiencies. *See Id.* [sic] at 687, 689, & 695. Further, the United States Supreme Court stated that there is no reason for a court deciding an ineffective assistance claim to approach the

> inquiry in the same order or even to address both components of the inquiry."
> *See Id.*[sic] at 697. In other words, if Defendant fails to establish one prong, the other prong need not be considered. *See Johnson v. State*, 593 So.2d 206, 209 (Fla. 1992).

Dkt. 9, Ex. 014, Vol. 1 at 149.

The trial court identified the correct standard of review for an ineffective assistance of counsel claim, as enunciated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. at 689-90. Thus, Petitioner must establish that the trial court's application of the *Strickland* standard "resulted in a decision that was contrary to, or involved an unreasonable application" of the standard or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In the present case, the trial court found as follows:

> Claim One:
>
> First, Defendant claimed that his trial counsel was ineffective for failing to object to the admission of Officer Yarborough's testimony inferring the commission of other crimes not charged. During trial, the State asked its witness, Officer Yarborough, if Defendant was apprehended on someone else's property. Officer Yarborough replied that Defendant was apprehended between two houses on private property. At the November 15, 2000, hearing, Defendant testified that he interpreted Officer Yarborough's reply to imply that Defendant was going from house to house to steal.
>
> This Court finds that Defendant is not entitled to relief on this claim. Pursuant to trial counsel Greg Williams's testimony, he chose not to object to Officer Yarborough's testimony for strategic reasons. Matters of trial tactics are left to the discretion of counsel and will not be second-guessed unless shown to be patently unreasonable. *See Cabrera v. State*, 766 So. 2d 1131, 1133-1134 (Fla. 2d DCA 2000) (citing *Roesch v. State*, 627 So. 2d 57, 58 n.3 (Fla. 2d DCA 1993)). To show that counsel's strategic choice was unreasonable, a defendant must show that no competent counsel would have made such a choice. *See White v. State*, 729 So. 2d 909 (Fla. 1999) (citing *Provenzano v. Singletary*, 148 F. 3d 1327, 1332 (11th Cir. 1998)). In examining counsel's performance, courts are required to presume that counsel rendered adequate assistance and exercised reasonable professional judgment in making all

significant decisions; courts are also required to make every effort to eliminate the distorting effects of hindsight by evaluating counsel's performance from his or her perspective at, the time. *See Shere v. State*, 742 So. 2d 215 (Fla. 1999).

In the instant case, it was undisputed that Officer Yarborough's testimony was factually correct; Defendant was apprehended on private property between two houses. Mr. Williams testified that he did not interpret Officer Yarborough's testimony to mean that Defendant had committed other burglaries and that if he had objected to Officer Yarborough's testimony, it would have unduly drawn the jury's attention to the statement. Additionally, Mr. Williams testified that the location where Defendant was apprehended was not a focal point of either Officer Yarborough's testimony or of the defense's dual strategy to show that Defendant did not commit the alleged crimes and that the crimes charged were not committed.

This Court finds that Mr. Williams made a reasonable strategic choice given the dual strategy and other circumstances existing at the time. Additionally, this Court finds that had Mr. Williams' performance been deficient, Defendant was not prejudiced by the alleged deficiency because Officer Yarborough's statement was not a substantive part of the trial. Because Defendant failed to meet his burden, this claim is denied.

Claim Two:

Second, Defendant claimed that his trial counsel was ineffective for interfering with Defendant's right to testify at his trial by misadvising him that the State would be allowed to introduce the number and nature of Defendant's prior convictions.

At the evidentiary hearing, Defendant testified that Mr. Williams advised him that it was not in his best interest to testify at trial because then the State could introduce the number and nature of Defendant's prior convictions. Because he had been previously convicted of Burglary (the same offense with which he is charged in the instant case), Defendant stated that he decided not to testify at trial.

Mr. Williams testified that he could not recall the conversation with Defendant on this matter. However, Mr. Williams testified that it is his practice to advise a defendant that the State can introduce the number of prior convictions and crimes of moral turpitude; and that in certain scenarios, based on the defendant's testimony, the State can introduce the nature of the prior convictions. Again, depending on the substance of the defendant's testimony, one such scenario is when the charge with which the defendant is charged is the same as the defendant's prior conviction, as is the case here. Mr.

-11-

Williams further testified that he leaves the decision whether to testify up to the defendant and that the defendant has the final say in such matter.

After hearing the testimonies of Defendant and Mr. Williams, this Court finds Mr. Williams' testimony to be more credible. This Court notes that Defendant is a multiple convicted felon who thus has some experience with the legal system. It is more probable that Mr. Williams advised Defendant per his practice and that Defendant misunderstood the advice. Moreover, this Court inferred from the totality of Mr. Williams' testimony that there was some question as to whether Mr. Williams ethically would have felt comfortable calling Defendant as a witness. Because this Court finds Mr. Williams' testimony more credible, this claim is denied.

Claim Three:

Lastly, Defendant claimed that the Court erred and that his trial counsel was ineffective for failing to object to improper jury instructions regarding the elements of burglary. Specifically, Defendant asserted that the jury instructions failed to allege the underlying offense of Theft upon which the State relied to support its Burglary charge.

This Court finds that Defendant is not entitled to relief. As brought out at the evidentiary hearing, the law at the pertinent time did not require that the underlying offense be specified. *See State v. Waters*, 436 So. 2d 66 (Fla. 1983); *Bernhardt v. State*, 741 So. 2d 1230 (Fla. 2d DCA 1999) (citing *Viveros v. State*, 699 So. 2d 822, 824 (Fla. 4th DCA 1997)); *Duncan v. State*, 606 So. 2d 1227 (Fla. 4th DCA 1992). Thus, the jury instructions as read to the jury were legal. Despite this, before the jury instructions were read to the jury Mr. Williams did object to the jury instructions and moved to dismiss the information for failing to cite a specific underlying offense. The Court overruled Defendant's objection. Further, Mr. Williams testified that it was his understanding that the law did not require that a specific underlying offense to be specified and that he did not think that an objection after the instructions were read would have been valid.

Additionally, Mr. Williams testified that in his closing, he argued that the jury find for the Defendant because the State did not prove specific intent.

This Court finds that Defendant's claim is factually incorrect because Mr. Williams did object to the jury instructions, but was overruled by the Court. Assuming that Mr. Williams' failure to object after the jury instructions were read did not preserve the matter for appeal, this Court finds that the alleged failure to preserve for appeal a legal point with no merit in no way entitles Defendant to relief. Because Mr. Williams' performance was not deficient, this claim is denied.

Dkt. 9, Ex. 014, Vol. 1 at 150-54.

Petitioner fails to cite any case authority to support his claim that the state court's decision was contrary to, or an unreasonable application of, federal law as established by the Supreme Court, as required by 28 U.S.C. § 2254(d). Instead, Petitioner cites *Gallego v. United States*[2] and *United States v. Teague*[3] in support of his claim that trial counsel was ineffective for advising him against testifying and the trial court erred in finding trial counsel to be more credible than Petitioner during the Rule 3.850 hearing. As the Eleventh Circuit has recently reiterated:

> The phrase "clearly established Federal law," as used in § 2254(d)(1), encompasses only the holdings of the United States Supreme Court. *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Section 2254(d)(1) expressly "restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Id.* As we have previously explained, "§ 2254(d)(1) provides a measuring stick for federal habeas courts reviewing state court decisions. That measuring stick is 'clearly established Federal law.' Clearly established federal law is *not* the case law of the lower federal courts, including this Court. Instead, in the habeas context, clearly established federal law 'refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state court decision.'" *Putman v. Head,* 268 F.3d 1223, 1241 (11th Cir. 2001) (alteration in original) (quoting *Williams,* 529 U.S. at 362, 120 S.Ct. 1495).

*Ventura v. Attorney General*, 2005 WL 1869122, at *8 (11th Cir. Aug. 9, 2005).

Even if a circuit court's decision were considered "clearly established Federal law" under § 2254, the two cases upon which Petitioner relies in support of his argument would be unavailing. Gallego, an incarcerated defendant, filed a motion to vacate his conviction under 28 U.S.C. § 2255, arguing ineffective assistance of counsel. *Gallego v. United*

---

[2] *Gallego v. United States*, 174 F.3d 1196, 1198 (11th Cir. 1999). Petitioner directs the Court's attention to footnote 5 at page 1198 of the *Gallego* decision. There are no footnotes in the *Gallego* opinion, but Westlaw has linked KeyCite Note 5 for the case to page 1198.

[3] *United States v. Teague,* 953 F.2d 1525, 1532 (11th Cir. 1992).

-13-

*States*, 174 F.3d at 1197. Following an evidentiary hearing held to determine whether Gallego was informed by his attorney of his right to testify at trial, the district court found that Gallego was not credible and held that "as a matter of law [a] defendant could not carry his burden without presenting some evidence in addition to his own word, which is contrary to counsel's." *Id.* at 1198. Refusing to adopt a *per se* "credit counsel in case of conflict rule," the circuit court rejected the district court's ruling that an attorney accused of providing ineffective assistance is automatically considered to be more credible than a defendant seeking vacation of his sentence. *Id.* The circuit court held instead that district courts should conduct a proper credibility determination, which includes looking to "the internal consistency of the [witness's] testimony, or his candor or demeanor on the stand." *Id.* The *Gallego* court did not foreclose a district court from finding that trial counsel is more credible than a criminal defendant, it merely set forth a standard which the district courts should use in evaluating competing interests in a collateral proceeding. In the instant case, the trial court conducted a proper credibility determination. Given Petitioner's contradictory testimony during the Rule 3.850 evidentiary hearing, discussed *infra*, and the difficulty he had distinguishing between what trial counsel actually told him and what he inferred from what trial counsel said "in so many words," the trial court's finding that trial counsel was the more credible witness is objectively reasonable.

The decision in *United States v. Teague* is equally unavailing as support for Petitioner's argument that the trial court erred in applying the *Strickland* standard to his claim. In *Teague*, the Eleventh Circuit recognized that:

> The decision whether a criminal defendant should take the witness stand in his own trial unquestionably has tremendous strategic importance. Nevertheless, the mere fact that such a decision involves trial strategy does not itself mandate that the decision ultimately rest with defense counsel. Nor

-14-

> does our conclusion place the right to testify in conflict with the right to counsel. Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide. This advice is crucial because there can be no effective waiver of a fundamental constitutional right unless there is an "intentional relinquishment or abandonment of a *known* right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (emphasis added).

*United States v. Teague*, 953 F.2d 1525, 1532 -1533 (11th Cir. 1992) (footnotes omitted). As the *Teague* court opined, "if counsel believes that it would be unwise for the defendant to testify, counsel may, and indeed should, advise the client in the strongest possible terms not to testify. The defendant can then make the choice of whether to take the stand with the advice of competent counsel." During the Rule 3.850 hearing, Petitioner acknowledged that trial counsel discussed his right to testify with him on three occasions (Dkt. 9, Ex. 014, Vol. 1 at 186, 194). Petitioner testified that he made the choice not to take the stand based on what he inferred from what trial counsel said "in so many words" when he advised Petitioner that it would not be in his best interest to testify. *Id.* at 189-90. With the benefit of hindsight, Petitioner has come to question the wisdom of the decision he made based on the inferences he drew. Given the facts of this case, responsibility for Petitioner's self-doubt cannot be transferred to trial counsel in the guise of an ineffective assistance of counsel claim.

Petitioner was charged with commission of a residential burglary involving entry into a garage and attempted burglary of another victim's dwelling. Consistent with Petitioner's testimony, *see* Dkt. 9, Ex. 014, Vol. 1 at 183-84, trial counsel testified that the defense strategy was to argue that while Petitioner might be guilty of trespass because he entered the property without permission, since he was merely looking for a place to lie down and

rest when he made the entry, the crime with which he was charged was not committed. *Id.* at 197.

Petitioner testified during the Rule 3.850 hearing that before the trial commenced, he and trial counsel discussed the possibility of Petitioner testifying. *Id.* at 182. According to Petitioner, trial counsel told him that "it would not be in [his] best interest to testify." *Id.*

Petitioner recalled that he and trial counsel had another discussion regarding whether he should take the stand after Officer Yarborough testified that when Petitioner was arrested he was "on private property" between two houses. *Id.* at 183. Petitioner testified that it was then that trial counsel explained to him that if he testified, the State "would bring up the number and the nature of [his] prior convictions and, therefore, wouldn't – would make me seem like a criminal." *Id.* at 183-84. According to Petitioner, he reasoned that if the jury learned that he had a prior conviction for burglary, he would be "automatically convicted already." *Id.* at 185. Petitioner testified that after conferring with trial counsel, he decided not to testify. *Id.* at 186.

Petitioner further testified that "with my limited law experience, I *felt* I shouldn't have testified at the time because of what he told me." *Id.* at 186 (emphasis added). When asked if trial counsel "specifically told [him] that if [he] testified the nature of [his] prior convictions would come out to the jury," Petitioner testified that he did "in so many words." When asked to explain what he meant, Petitioner testified that this was what he inferred from trial counsel's advice. According to Petitioner, when trial counsel stated that "it wouldn't be in [his] best interest to testify" and cautioned that his prior convictions "wouldn't look too swell to a jury," Petitioner "*felt* that the State would mention" the nature of his prior convictions in front of the jury. *Id.* at 189-90 (emphasis added).

-16-

Contradicting his earlier response, when Petitioner was again asked what trial counsel "specifically" told him "that the jury would learn of [his] prior convictions," Petitioner responded, "[t]he nature and the number." *Id.* at 190. Petitioner then reconfirmed that he made the decision not to testify. *Id.* at 191.

As the trial court pointed out during the Rule 3.850 evidentiary hearing, the record reflects that after the prosecution rested its case, trial counsel again discussed this matter with Petitioner, *see id.* at 73. The trial court asked Petitioner if he recalled answering questions proffered by the court during the trial. Petitioner stated that he did not. *Id.* at 192. In an effort to refresh Petitioner's memory, the trial court read to him that portion of the trial transcript establishing that he voluntarily and knowingly waived his right to testify. *Id.* at 193-94. When queried by the trial court, Petitioner confirmed that the statements he made during the trial were "true and correct." *Id.* at 194. Upon further questioning by post-conviction counsel, however, Petitioner stated that while the trial transcript accurately reflected his satisfaction at that time with the advice trial counsel had given him regarding his right to testify, he had since learned that trial counsel's advice was not correct.

Trial counsel testified that he did not recall these discussions with Petitioner, but that it was his habit to advise a client that if he testified the fact that he was a convicted felon would come out, as well as the number of his prior convictions, and that the nature of his convictions could come out in certain circumstances, depending on how he testified. *Id.* at 201-02. According to trial counsel, he would then inform the defendant that he ultimately had the final decision on the issue and advise him of what, in his professional opinion, would be in the defendant's best interest. *Id.* at 202.

In its order denying Petitioner's Rule 3.850 motion, the trial court considered Petitioner's experience in the criminal justice system prior to the trial – he acknowledged that he had "some drug convictions" and a burglary conviction, *see id.* at 185; Petitioner's testimony regarding the information trial counsel provided him about his right to testify and his understanding of that information; trial counsel's testimony regarding the information he routinely gave criminal defendants regarding their right to testify; and the legal soundness of said information. Concluding that "it was more probable" that trial counsel, consistent with his practice, advised Petitioner of his right to testify, and Petitioner misunderstood the advice, the trial court rejected Petitioner's claim that trial counsel's performance was deficient in this regard.

The record supports the trial court's findings. Petitioner failed to overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See Strickland v. Washington*, 466 U.S. at 689-90. Having failed to satisfy the first prong of the *Strickland* test, Petitioner has not demonstrated that he is entitled to federal habeas relief on this claim.

As to Petitioner's argument that the trial court erred in finding trial counsel's testimony more credible than Petitioner's testimony, as discussed above, this argument lacks merit. As recognized in *United States v. Ramirez-Chilel*, "[c]redibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." 289 F.3d 744, 749 (11th Cir. 2002) (citation omitted). It is well established that "a 'trial judge's . . . choice of whom to believe is conclusive . . . unless the judge credits exceedingly improbable testimony.'" *Id.* In the instant case, the trial court's understanding

of the facts is not "unbelievable," and it conducted a proper credibility determination. The Court finds Petitioner's credibility argument unpersuasive.

Petitioner has not rebutted the trial court's factual findings by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Nor has he shown that the trial court's decision resulted in a decision that was contrary to, or involved an unreasonable application, of clearly established Federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

## CONCLUSION

For the foregoing reasons, the Court finds that Petitioner has not demonstrated that he is entitled to federal habeas relief.

ACCORDINGLY, the Court **ORDERS** that:

1. The Petition for Writ of Habeas Corpus is **DENIED** (Dkt. 1).

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

**DONE** and **ORDERED** in Tampa, Florida on September 12, 2005.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copy furnished to:
All Parties of Record

SA/jsh